# EXHIBIT B

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE: COMPOUNDING PHARMACY
PRODUCT LIABILITY LITIGATION

MDL No.: _____

)

BRENDA AND ROBERT BANSALE'S MOTION FOR TRANSFER OF ACTIONS TO THE DISTRICT OF MINNESOTA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Pursuant to 28 U.S.C. § 1407 and Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Brenda and Robert Bansale, the plaintiffs in *Bansale, et al. v. New England Compounding Pharmacy, Inc*, Case No. 12-cv-14559 (E.D. Mich.) ("Bansale"), respectfully move the Judicial Panel on Multidistrict Litigation ("the Panel") for an order transferring the actions identified in the attached Exhibit A, Schedule of Actions (the "Compounding Pharmacy Cases"), and all subsequently filed related actions, to the United States District Court for the District of Minnesota for coordinated or consolidated pretrial proceedings. Transfer of these actions pursuant 28 U.S.C. § 1407 is appropriate for the reasons set forth below, and more fully explained in the accompanying memorandum, including:

1. Four actions have been filed to-date and are identified in the attached Exhibit A, Schedule of Actions. They include actions filed in the Eastern District of Michigan (Bansale and Laperriere), and the District of Minnesota (Edwards and Puro).

1

2. Plaintiffs in the four Compounding Pharmacy Cases are Barbe Puro, Rosalinda Edwards, Brenda and Robert Bansale, and Lyn and Penny Laperriere,

3. The Puro case was filed on October 11, 2012. It was filed in the District of Minnesota and is proceeding before United States District Court Judge Donovan W. Frank.

4. The Edwards case was filed on October 15, 2012. It was filed in the District of Minnesota and is proceeding before United States District Court Judge Ann D. Montgomery.

5. The Bansale case was filed on October 15, 2012. It was filed in the Eastern District of Michigan and is proceeding before United States District Court Judge Sean F. Cox.

6. The Laperriere case was filed on October 16, 2012. It was filed in the Eastern District of Michigan and is proceeding before United States District Court Judge Stephen J. Murphy III.

7. Under 28 U.S.C. § 1407, the transfer and coordination or consolidation of the Compounding Pharmacy Cases will serve the convenience of the parties, witnesses, counsel, and the judicial system. Absent pretrial coordination or consolidation, the possibility of inconsistent pretrial rulings exists.

8. No judicial resources will be wasted if these cases are transferred to the District of Minnesota given that all other cases have only recently been filed, and the Defendants have not yet responded to any of the complaints in the other underlying actions.

WHEREFORE, for the reasons stated herein and in the accompanying Brief, Brenda and Robert Bansale respectfully request that the Panel issue an order transferring all actions listed in the attached Exhibit A, Schedule of Actions, as well as all subsequently filed related actions, to the United States District Court for the District of Minnesota before United States District Court Judge Donovan W. Frank for coordinated or consolidated pretrial proceedings.

Dated: October 16, 2012                     Respectfully submitted,

s/ Alyson Oliver
Alyson Oliver (P55020)
**OLIVER LAW GROUP PC**
950 W. University Drive, Suite 200
Rochester, MI 48307
248-327-6556
www.legalactionnow.com
aoliver@oliverlg.com

Marc Lipton (P43877)
**LIPTON LAW**
18930 W. 10 Mile Road, Suite 3000
Southfield, MI 48075
248-557-1688
www.liptonlaw.com
marc@liptonlaw.com

E. Powell Miller (P39487)
Marc L. Newman (P51393)
**THE MILLER LAW FIRM PC**
950 W. University Drive, Suite 300
Rochester, MI 48307
248-841-2200
www.millerlawpc.com
epm@millerlawpc.com
mln@millerlawpc.com

*Counsel for Plaintiffs Brenda Bansale and Robert Bansale*

3

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE: COMPOUNDING PHARMACY
PRODUCT LIABILITY LITIGATION

MDL No.: _____

)

**MEMORANDUM OF LAW IN SUPPORT OF BRENDA AND ROBERT BANSALE'S MOTION FOR TRANSFER OF ACTIONS TO THE DISTRICT OF MINNESOTA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

# TABLE OF CONTENTS

                                                                     **Page**

I. INTRODUCTION..................................................................2

II. FACTUAL BACKGROUND.....................................................3

III. ANALYSIS...........................................................................4

    A. The Compounding Pharmacy Cases Should Be Transferred to a Single District for Pretrial Coordination........................................................4

        1. The Compounding Pharmacy Cases Involve Common Questions of Fact.......................................................................4

        2. Transfer Would Be Convenient for the Parties and Witnesses........6

        3. Transfer Would Promote the Just and Efficient Conduct of the Litigation....................................................................7

    B. The Compounding Pharmacy Cases Should be Transferred to the District of Minnesota..............................................................10

IV. CONCLUSION....................................................................11

## TABLE OF AUTHORITIES

**Cases**

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 710 F. Supp. 2d 1378, 1380 (J.P.M.L. 2010) ............................................................................................. 5, 7

*In re Baldwin-United Corp. Litig.*, 581 F. Supp. 739, 741 (J.P.M.L. 1984) ..................... 6

*In re Baycol Prods. Liab. Litig.*, 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001) ............... 10

*In re Celotex Corp. "Technifoam" Prods. Liab. Litig.*, 424 F. Supp. 1077, 1078-79 (J.P.M.L. 1977) ..................................................................................................... 5

*In re Chrysler LLC 2.7 Liter V-6 Engine Oil Sludge Prods. Liab. Litig.*, 598 F. Supp. 2d 1372, 1373 (J.P.M.L. 2009) ............................................................................ 7

*In re Cygnus Telcoms. Tech., LLC Patent Litig.*, 177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001) ................................................................................................................... 8

*In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, MDL. No. 2226, 2012 U.S. Dist. LEXIS 81394, at *2 (J.P.M.L. June 12, 2012) ..................................... 4

*In re Maxim Integrated Prods.*, MDL No. 2354, 2012 U.S. Dist. LEXIS 79496, at *4 (J.P.M.L. June 8, 2012) ....................................................................................... 4

*In re Method of Processing Ethanol Byproducts and Related Subsystems ('858) Patent Litig.*, 730 F. Supp. 2d 1379, 1380 (J.P.M.L. 2010) .......................................... 6

*In re Methyl Methacrylate (MMA) Antitrust Litig.*, 435 F. Supp. 2d 1345, 1347 (J.P.M.L. June 20, 2006) ..................................................................................... 11

*In re MF Global Holdings Ltd. Inv. Litig.*, MDL No. 2338, 2012 U.S. Dist. LEXIS 58792, at *4 (J.P.M.L. Apr. 23, 2012) ................................................................ 5

*In re Natural Res. Fund, Inc. Sec. Litig.*, 372 F. Supp. 1403, 1404 (J.P.M.L. 1974) ...... 9

*In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360-1361 (J.P.M.L. 2008) ..... 5

*In re Pharmacy Benefit Managers*, 452 F. Supp. 2d 1352, 1353 (J.P.M.L. 2006) .......... 8

*In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968) .......................... 9

2:12-cv-14559-RHC-PJK   Doc # 11-3   Filed 12/19/12   Pg 8 of 19   Pg ID 151

Case MDL No. 2419   Document 2-1   Filed 10/16/12   Page 4 of 15

*In re Polychloroprene Rubber Antitrust Litig.*, 360 F. Supp. 2d 1348, 1350-
1351 (J.P.M.L. 2005) ........................................................................................................ 7

*In re Tribune Co. Fraudulent Conveyance Litig.*, MDL No. 2296, 2011 U.S. Dist.
LEXIS 146375, *1-5 (J.P.M.L. Dec. 20, 2011) .............................................................. 10

*In re: Merscorp Inc., et al., Real Estate Settlement Procedures Act (RESPA) Litig.*,
560 F. Supp. 2d 1371, 1372 (J.P.M.L. 2008) ................................................................... 5

**Statutes**

28 U.S.C. § 1407 ................................................................................................... 2, 4, 7, 11

**Other Authorities**

Manual for Complex Litigation, Fourth, § 20.131 (2004) .................................................. 4

Ten Steps to Better Case Management: A Guide for Multidistrict Litigation

Transferee Judges (2009) .................................................................................................. 9

**Rules**

Fed. R. Civ. P. 23(g)(3) ....................................................................................................... 9

United States Judicial Panel on Multidistrict Litigation, Rules 7.1 and 7.2 ...................... 8

## I.   INTRODUCTION

Coordination and Transfer of the pending Compounding Pharmacy Cases under 28 U.S.C. § 1407 is proper because the cases all arise from the same factual context and involve the many shared facts and legal issues – whether New England Compounding Pharmacy or other related defendants violated the law by manufacturing and distributing tainted medicine and are liable to Plaintiff. Pretrial proceedings, including class certification, motion practice, discovery and damage issues in all of the Compounding Pharmacy Cases will involve the same evidence and arguments, which will in turn be directed toward resolving the parties' positions relative to the central issue in all the cases – the liability of defendants to plaintiffs for injuries.

For example, all of the four cases filed to date involve the same facts and claims, namely that: (1) plaintiffs were injured by defendant's when they were exposed to injections of tainted medicine; (2) defendants are strictly liable to plaintiffs for design defects; (3) defendants are strictly liable to plaintiffs for failure to warn; (3) defendants are strictly liable to plaintiffs for manufacturing defect; (4) defendants are liable to plaintiffs for neglect; (5) defendants are liable to plaintiff for negligent misrepresentation; (5) defendants are liable to plaintiffs for breach of express and implied warranties; (6) defendants are liable to plaintiffs for loss of consortium; (7) defendants are liable to plaintiff for violation of consumer protection laws; (8) defendants have been unjustly enriched; and (9) defendant should be assessed punitive damages. Having one transferee court preside over one consolidated MDL case will promote orderly pretrial proceedings, and result in consistent rulings on discovery, class certification motions, and ultimately the critical issues, all of which are consistent with this Panel ordering consolidation under 28 U.S.C § 1407(a).

## II. FACTUAL BACKGROUND

The Compounding Pharmacy Cases involve the same common facts. In September 2012, the Tennessee Department of Health began an initial investigation into confirmed fungal meningitis following an epidural steroid injection. In collaboration with the North Carolina Department of Health and Human Services, the Departments identified 8 cases of fungal meningitis following injection of epidural Steroids with preservative free methylprednisolone acetate solution (MPA), compounded at New England Compounding Center (NECC) in Framingham, Massachusetts. All nine patients had received one or more injections from drugs manufactured and distributed by New England Compounding Center. FDA investigators located fungal contamination in a sealed vial of the steroid at NECC's facilities. The discovery prompted NECC to recall 17,676 single-dose vials of the steroid.

A multistate investigation led by the CDC, in collaboration with state and local health departments and the FDA had identified almost 14,000 persons potentially exposed to medications from lots manufactured by New England Compounding Pharmacy, Inc. with 198 cases of fungal meningitis and 15 deaths associated with this outbreak in 13 states. According to the CDC, people who develop fungal meningitis may have symptoms that include: headache, fever, nausea, and stiffness of the neck. Infected people may also feel confused, dizzy, or discomfort from bright lights. Some victims may suffer strokes or death. The incubation period for fungal meningitis is anywhere between a few days to one month, so health officials believe the number of victims will increase.

Since the initial recall, every product manufactured and distributed by NECC has been recalled, and the FDA is investigating other companies who are related to or operate closely with NECC.

### III. ANALYSIS

#### A. The Compounding Pharmacy Cases Should Be Transferred to a Single District for Pretrial Coordination.

The Panel may transfer cases to a single judicial district for pretrial coordination or consolidation if: (1) they involve "common questions of fact"; (2) transfer would be convenient for the parties and witnesses; and (3) transfer would "promote the just and efficient conduct" of the cases. 28 U.S.C. § 1407(a). "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." *Manual for Complex Litigation, Fourth*, § 20.131 (2004).

#### 1. The Compounding Pharmacy Cases Involve Common Questions of Fact.

Section 1407 authorizes the transfer and coordination of cases that involve "common questions of fact." 28 U.S.C. § 1407(a). The relevant question is whether the actions "arise from a common factual core." *Id.* The Compound Pharmacy Cases easily meet that test. For example, all of these cases allege the same principal facts, namely that defendants manufactured and distributed injectable products that were tainted and by virtue of receiving the product plaintiffs were physically, emotionally and financially damaged.

Clearly, the Compound Pharmacy Cases are nearly identical, exceeding the requirements of Section 1407(a), and making transfer and consolidation of the actions highly appropriate. *See In re Maxim Integrated Prods.*, MDL No. 2354, 2012 U.S. Dist. LEXIS 79496, at *4 (J.P.M.L. June 8, 2012) ("[t]ransfer under Section 1407(a) does not require a complete identity or even majority of common factual or legal issues as a prerequisite to transfer."); *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, MDL. No. 2226, 2012 U.S. Dist. LEXIS 81394, (J.P.M.L. June 12, 2012) ("Furthermore, while these actions may involve some unique issues of

4

fact, the majority of claims are virtually identical to claims already pending in the MDL. Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer."); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 710 F. Supp. 2d 1378, 1380 (J.P.M.L. 2010) (transfer and consolidation proper for 29 actions involving state sales taxes filed in 28 districts); *In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360-1361 (J.P.M.L. 2008) (actions which plead claims under different state statutory and common law appropriate for transfer because "presence of additional or differing legal theories is not significant when the actions still arise from a common factual core").

Consolidation and transfer is appropriate even where, unlike here, one group of plaintiffs have asserted different legal claims. Indeed, "where actions share factual questions, the Panel has long held that the presence of disparate legal theories is not a basis to deny transfer." *In re MF Global Holdings Ltd. Inv. Litig.*, MDL No. 2338, 2012 U.S. Dist. LEXIS 58792, at *4 (J.P.M.L. Apr. 23, 2012).; *see also In re: Merscorp Inc., et al., Real Estate Settlement Procedures Act (RESPA) Litig.*, 560 F. Supp. 2d 1371, 1372 (J.P.M.L. 2008) (where plaintiffs opposed transfer citing "unique state law claims," Panel found that transfer was proper because "[t]ransfer under Section 1407. . . does not require a complete identity or even a majority of common factual or legal issues as prerequisite to transfer.").

Nor does it matter if some of the cases may ultimately name different Defendants. *See In re Celotex Corp. "Technifoam" Prods. Liab. Litig.*, 424 F. Supp. 1077, 1078-79 (J.P.M.L. 1977) ("The fact that [an action] may also involve parties and issues not present in the other actions . . . is no obstacle to transfer."). The relevant question for Section 1407 purposes is whether the ten cases share common questions of fact, which here, they all clearly do.

## 2. Transfer Would Be Convenient for the Parties and Witnesses.

Transferring the Compounding Pharmacy Cases to a common Court—for example, the District of Minnesota—would be convenient for the parties and any witnesses, if needed. New England Compounding Pharmacy Inc. is the primary defendants named in each of the current Compounding Pharmacy Cases listed on Exhibit A. From defendant's perspective, transferring the cases to a single court would be far more convenient than simultaneously litigating the same issues in multiple states such as Michigan and Minnesota. Due to the fact that all of the underlying cases are so similar, pretrial coordination of these actions in any single district is more appropriate than allowing the cases to proceed individually. It simply makes sense for one judge to "structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that the common party and witnesses are not subjected to discovery demands that duplicate activity that will or has occurred in other actions." *In re Method of Processing Ethanol Byproducts and Related Subsystems ('858) Patent Litig.*, 730 F. Supp. 2d 1379, 1380 (J.P.M.L. 2010). Without centralization, defendant would be subjected to multiple different district judges' decisions on the timing and scope of discovery, class certification, and other important pretrial issues. Allowing multiple different cases to proceed in different jurisdictions would create needless inconvenience, disruption and burden.

Plaintiffs, too, will benefit from pretrial centralization. Instead of proceeding individually, they can "combine their forces and apportion the workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned." *In re Baldwin- United Corp. Litig.*, 581 F. Supp. 739, 741 (J.P.M.L. 1984). It would be a highly wasteful exercise for

6

different groups of plaintiffs' lawyers to engage in redundant pretrial activities when the work can be divided in a coordinated proceeding in a more efficient manner.

Consolidation will also enable a single judge to establish a pretrial program that will minimize expenses to the parties. These savings are precisely the types of savings that this Panel has used traditionally to justify the consolidation of actions in different jurisdictions. *See In re Chrysler LLC 2.7 Liter V-6 Engine Oil Sludge Prods. Liab. Litig.*, 598 F. Supp. 2d 1372, 1373 (J.P.M.L. 2009) (finding that "[c]entralization w[ould] enable one judge to streamline pretrial proceedings and make consistent rulings on discovery disputes, dispositive motions, and issues relating to experts" where the proposed classes did not overlap, but where the actions were "nearly identical in terms of the facts alleged"); *In re Polychloroprene Rubber Antitrust Litig.*, 360 F. Supp. 2d 1348, 1350-1351 (J.P.M.L. 2005) ("Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to class certification matters), and conserve the resources of the parties, their counsel and the judiciary.").

### 3. Transfer Would Promote the Just and Efficient Conduct of the Litigation.

Transfer to a single district also would "promote the just and efficient conduct" of the Compounding Pharmacy Cases. 28 U.S.C. § 1407. In light of the nearly identical factual allegations transfer under Section 1407 will save judicial time and resources. *See AT&T Mobility*, 710 F. Supp. 2d at 1380 ("centralization will save considerable judicial time," because "discovery. . . will undoubtedly overlap and many of the legal issues will turn on similar facts and law."); *In re European Rail Pass Antitrust Litig.*, MDL No. 1386, 2001 U.S. Dist. LEXIS 1417, at *3 (J.P.M.L. Feb. 7, 2001) (ordering cases transferred to a single district to

7

"eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.").

First, all of the other cases are in their earliest stages. In fact, they have all been filed within the past few days or weeks. Defendants have not responded to the underlying complaints, let alone engaged in substantive negotiations with the plaintiffs concerning case management. When an opportunity presents itself, as it has here, it makes sense to coordinate these actions from the start, and ensure that all parties can benefit from the MDL tag-along procedures in the likely event that similar cases are filed subsequently. *See* United States Judicial Panel on Multidistrict Litigation, Rules 7.1 and 7.2; *In re Metoprolol Succinate Patent Litig.*, 329 F. Supp.2d 1368, 1370 (J.P.M.L. 2004) ("Section 1407 will have the salutary effect of assigning the present actions and any future tag-along actions to a single judge who can formulate a pretrial program that ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties and the courts.").

Secondly, transfer would ensure consistent pretrial rulings on dispositive motions, and class certification. *See, e.g., In re Baycol Prods. Liab. Litig.*, 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001) (centralization promotes the just and efficient conduct of litigation where it "prevent[s] inconsistent pretrial rulings, including with respect to class certification"); *In re Cygnus Telcoms. Tech., LLC Patent Litig.*, 177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001) ("And while we applaud every cooperative effort undertaken by parties to any litigation, we observe that transfer under Section 1407 has the benefit of placing all actions in this docket before a single judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs while ensuring that common parties and witnesses are not subjected to discovery demands which duplicate activity that has already occurred or is occurring in other actions").

8

It would be inefficient for four judges (or more) to issue potentially conflicting merits and class certification rulings in putative class actions against the same defendant over the same core conduct. *See, e.g., In re Pharmacy Benefit Managers*, 452 F. Supp. 2d 1352, 1353 (J.P.M.L. 2006) (where the defendants in the actions differed, but the allegations all focused on the same conduct, finding that centralization was "desirable" in order to "prevent inconsistent or repetitive pretrial rulings (especially on the issue of class certification)"); *In re Natural Res. Fund, Inc. Sec. Litig.*, 372 F. Supp. 1403, 1404 (J.P.M.L. 1974) ("[T]he potential for conflicting class determinations by the transferor courts" is a "highly persuasive if not compelling reason for transfer.").

In a consolidated or coordinated proceeding under Section 1407 where class actions are involved – as here – the presiding district judge is likely to appoint interim class counsel under Fed. R. Civ. P. 23(g)(3). *See* Ten Steps to Better Case Management: A Guide for Multidistrict Litigation Transferee Judges (2009) ("It is often necessary in complex MDLs to select lead, liaison, and/or administrative counsel. This is one of your first and most important decisions.").

Appointed interim class counsel can then make decisions on behalf of the putative class, including the composition of a master complaint and agreements with defense counsel concerning scheduling and discovery matters. That creates efficiencies for the parties and the judiciary and ensures an orderly process.

However, in the absence of pretrial centralization, plaintiffs would likely vie for conflicting interim class counsel appointments in multiple judicial districts and likely seek different pretrial schedules and make different discovery demands. *See, e.g., In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968) ("It is in the field of class action determinations in related multidistrict civil actions that the potential for conflicting, disorderly, chaotic judicial action is the greatest.").

That procedural morass can be avoided by ordering the Compounding Pharmacy Cases transferred to a single district under Section 1407 and it will confer benefits upon the plaintiffs, defendants and the judiciary. *See In re Tribune Co. Fraudulent Conveyance Litig.*, MDL No. 2296, 2011 U.S. Dist. LEXIS 146375, *1-5 (J.P.M.L. Dec. 20, 2011) (transfer and consolidation will conserve resources of judiciary, the parties, and their counsel)

## B. The Compounding Pharmacy Cases Should Be Transferred to the District of Minnesota

The District of Minnesota is the most appropriate district for the Compounding Pharmacy Cases to proceed for pretrial activities relative to all of the substantive reasons outlined above.

Plaintiff requests that the panel enter an Order transferring all related cases to the District of Minnesota. The District of Minnesota is the most appropriate and convenient transferee district for several reasons: it was the location of the earliest litigation filed, it has ample and experienced judicial resources, it has a superior MDL and general docket, its central location is an accessible and convenient forum for parties, witnesses and counsel, it is equipped with sophisticated state-of-the-art courtroom technology, and no action has significantly progressed in any jurisdiction and no judge has gained any significant experience with any of the Related Actions.

A significant factor favoring the District of Minnesota is its ample judicial resources and proven track record handling multidistrict litigation. Judges within the District have effectively and efficiently handled numerous MDLs, including, among others, *In re Airline Ticket Commission Antitrust Litigation* (MDL No. 1058), *In re Monosodium Glutamate Antitrust Litigation* (MDL No. 1328), *In re: Mirapex Products Liability Litigation* (MDL No. 1836), *In re: Medtronic, Inc. Implantable Defibrillator Product Liability Litigation* (MDL No. 1726), *In re Viagra Products Liability Litigation* (MDL No. 1724), *In re: Guidant Corp. Implantable Defibrillators Products Liability Litigation* (MDL No. 1708), *In re: Baycol Product Liability Litigation* (MDL No. 1431),

and *In re: St. Jude Medical, Inc. Silzone Heart Valves Products Liability Litigation* (MDL No. 1396).

In this matter, the first filed case in the District of Minnesota, *Puro v. New England Compounding Pharmacy, Inc.,* was assigned to Judge Donovan Frank. The Honorable Judge Frank has presided over several MDLs including, for example, *In re: Guidant Corp. Implantable Defibrillators Products Liability Litigation* (MDL No. 1708), and *In re: Vehicle Tracking and Security System* (MDL No. 2249).

The Guidant MDL involved an allegedly defective medical device and has thus provided Judge Frank with relevant experience not only at efficiently and effectively managing a large MDL, but one with medical issues and injuries underlying the claims. For this reason, the District of Minnesota is the soundest choice for the placement of an MDL.

Moreover, where the actions subject to a transfer motion are geographically dispersed, the Panel traditionally has sought to identify a location that maximizes accessibility and convenience for the parties and their counsel. *See, e.g., In re Methyl Methacrylate (MMA) Antitrust Litig.*, 435 F. Supp. 2d 1345,1347 (J.P.M.L. June 20, 2006) (weighing geographic convenience in transfer decision). Minnesota is centrally located within the United States and is easily accessible from all areas of the country.

## IV. CONCLUSION

For the foregoing reasons, Brenda and Robert Bansale respectfully request that the Panel transfer the Compounding Pharmacy Cases, listed in the attached Schedule of Actions, to the United States District Court for the District of Minnesota, for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Transfer to the District of Minnesota before Judge

Donovan W. Frank is appropriate because the first filed cases of the four cases pending already is pending there, because that district has the resources and judicial expertise to conduct this case promptly and efficiently, and because that district, being centrally located, is most convenient to all the parties to these actions.

Dated: October 16, 2012

Respectfully Submitted,

s/ Alyson Oliver
Alyson Oliver (P55020)
**OLIVER LAW GROUP PC**
950 W. University Drive, Suite 200
Rochester, MI 48307
248-327-6556
www.legalactionnow.com
aoliver@oliverlg.com

Marc Lipton (P43877)
**LIPTON LAW**
18930 W. 10 Mile Road, Suite 3000
Southfield, MI 48075
248-557-1688
www.liptonlaw.com
marc@liptonlaw.com

E. Powell Miller (P39487)
Marc L. Newman (P51393)
**THE MILLER LAW FIRM PC**
950 W. University Drive, Suite 300
Rochester, MI 48307
248-841-2200
www.millerlawpc.com
epm@millerlawpc.com
mln@millerlawpc.com

*Counsel for Plaintiffs Brenda Bansale and Robert Bansale*